HENRY COLTON and others, Executors, etc., of REUBEN PARSONS, Respondents, *v.* MARY A. FOX and ADA L. HOSMER, Impleaded, etc., Appellants.

*Will — trust — when void — illegal suspension of the power of alienation.*

The plaintiffs' testator, by his will, devised and bequeathed all the residue and remainder of his estate to his executors upon the following trusts, namely: "to pay the income, rents, issues and profits thereof to my brothers R. and W., and to my sisters, F. and N., equally, share and share alike, during the joint lives of my said brothers and sisters; and after the several deaths of my said brothers and sisters, then to divide the real and personal estate equally among the children of my said brothers and sisters respectively, the said children to take the parents' share; and I hereby expressly declare, that in case either of my said brothers or sisters shall die, leaving the others surviving, then the income herein intended for the one or the other so dying shall be paid to the issue or representative of the one or the other so dying." *Held*, that the trust was invalid as creating an illegal suspension of the power of alienation.

Appeal from a judgment of the Special Term, made in an action brought for the construction of the will of Reuben Parsons, deceased.

*Thomas M. Webster*, for the appellants.

*James Emott*, for the respondents. The word "several" here means respective, as was held in *Woodstock* v. *Shillito* (6 Sim., 416). The children of each of the four brothers and sisters named in the will, who were living at the time of the testator's death, took each a vested interest in the share bequeathed or devised to the parent for life, subject to be divested *pro tanto* to let in after born issue, if any. (2 Jar. on Wills, 74, 76; *Titus* v. *Weeks*, 37 Barb., 136.) The share of each of these children, in the event of such child dying before its parent, will pass to the personal representative of such child. It will not go over to the survivors. (*Everitt* v. *Everitt*, 29 N. Y., 39; *Jenkins* v. *Freyes*, 4 Paige, 47; *Dingley* v. *Dingley*, 5 Mass., 535; *Atty.-Gen.* v. *Crispin*, 1 Br. C. C., 386; *Devisme* v. *Meller*, id., 537; *Middleton* v. *Messenger*, 5 Ves., 136; *Fox* v. *Fox*, 19 Eng. Eq. Cas., 285.) The provisions of the statute forbidding the alienation by a *cestui que trust* of his interest in a trust to receive the rents and profits of lands (§ 63, 1 R. S., 730),

are not applicable to trusts of personal property. (*Kane* v. *Gott*, 24 Wend., 641, 662, Judge COWEN's opinion; *Arnold* v. *Gilbert*, 5 Barb., 590; *Cruger* v. *Cruger*, id., 225; *Titus* v. *Weeks*, 37 id., 136; Opinion of DENIO, J., in *Graff* v. *Bonnett*, 31 N. Y., 9.)

DAVIS, P. J. :

This suit was brought by the executors of Reuben Parsons to obtain a construction of the eighth clause of his will, in order to determine whether the trusts thereby created of his residuary estate are valid. That clause of the will is as follows: " Eighth. I give and devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my executors hereinafter named; or the survivors or survivor of them, upon the following trusts, namely : to pay the income, rents, issues and profits thereof to my brothers, Roswell Parsons and William Parsons, and to my sisters, Fidelia Marcy and Nancy Charles, equally, share and share alike during the joint lives of my said brothers and sisters, and, after the several deaths of my said brothers and sisters, then to divide the said real and personal estate equally among the children of my said brothers and sisters respectively, the said children to take the parents' share. And I expressly declare that, in case either of my said brothers or sisters shall die, leaving the others surviving, then the income herein intended for the one or the other so dying shall be paid to the issue or representative of the one or the other so dying."

The appellants were sisters of the testator, of the half-blood. Neither of them is mentioned in the will. The intention of the testator to give to each of his brothers and sisters of the whole blood, named in the eighth clause of his will, the income of one-quarter of his residuary estate during their respective lives, is entirely plain; and it is equally clear that he intended to give the principal, or corpus, of each quarter to the children of each of his brothers and sisters then *in esse*, or to be born thereafter ; and the intention that the brothers and sisters of the half-blood should take nothing under the will follows by necessary implication.

With these several manifest intentions so palpably before us, it is our duty to determine whether or not the scheme adopted by the

testator to carry them out, is so far in conflict with the law that it cannot be upheld.

It is the duty of courts, if any construction can be given to the provisions of the will which will execute the intentions of a testator without violating law, to adopt such construction; but courts have no legal or moral power, however plain the intention of the testator, to make for him another will which shall consummate his intentions, where his own cannot stand in accordance with the law.

The true rule on this subject is expressed by Bronson, J., in *Hawley* v. *James* (16 Wend., at page 144). He says: " The rule that the intent of the testator is to govern in the construction of wills has no necessary connection with the inquiry whether the devise or bequest is consistent with the rules of law. When we have ascertained what particular disposition the testator intended to make of his estate, then, and not before, the question arises whether the will is valid. If the disposition actually made is not inconsistent with the rules of law, the will is good, and must be carried into effect, whatever the testator may have thought about the legality of the act. And, on the other hand, if the disposition actually made is contrary to law, whether it happened through design or the want of accurate information, the will is worthless, and we have no choice but to declare it void."

To this test the provisions of the will under consideration are to be brought. By them, all the rest, residue and remainder of the testator's estate, both real and personal, is devised and bequeathed to his executors or the survivors or survivor of them, upon the trusts named, which are, first, " to pay the income, rents, issues and profits thereof to my brothers, Roswell Parsons and William Parsons; and to my sisters, Fidelia Marcy and Nancy Charles, share and share alike, during the joint lives of my said brothers and sisters." This provision disposes of the rents, issues and profits in equal shares during the joint lives of the four persons named; and, standing by itself, the trust would undoubtedly terminate on the death of either of them, because its limitation is upon the *joint* lives of them all. But clearly it was not the intention of the testator that, upon the death of either one or more, the trust should cease as to the survivors or survivor. He did not design that, upon the death of one, the other three should cease to receive the equal share of

FIRST DEPARTMENT, DECEMBER TERM, 1875.

such rents, issues and profits intended to be given to him or her during his or her life, and the important question is : What does the scheme of his will do with the share of such decedent ? If it gives such share absolutely to his or her children, then there is nothing in conflict with the law in such a disposition. We have, therefore, to see whether the testator has disposed of the rents, issues and profits of any of his brothers or sisters who shall die, leaving the others surviving, in such manner that, if the scheme of the will be carried out, the whole fund in trust will be kept together undivided until the death of the last of his four brothers and sisters. To determine that, it seems necessary first to construe the last sentence of the eighth clause of the will. That sentence reads : "And I expressly declare that, in case either of my said brothers or sisters shall die, leaving the others surviving, then the income, herein intended for the one or the other so dying, shall be paid to the issue or representative of the one or the other so dying." This is a manifest disposition, not of the corpus, or principal, of the trust fund, but of income to be paid directly by the trustees. If we bring this sentence in direct contact with the other provision of the will relating to income, perhaps it will aid us in ascertaining the true construction of the provision. Read together, the directions are, " to pay the income, rents, issues and profits thereof to my brothers, Roswell Parsons and William Parsons, and to my sisters, Fidelia Marcy and Nancy Charles, equally, share and share alike, during the joint lives of my said brothers and sisters. And I hereby expressly declare that, in case either of my said brothers or sisters shall die, leaving the others surviving, then the income, intended for the one or the other so dying, shall be paid to the issue or representative of the one or the other so dying." Thus read, the provisions create a trust in favor first, of the four brothers and sisters during their joint lives ; but, when the joint estate in trust thus created shall terminate by the death of either of said brothers or sisters, leaving others surviving, then the trust is continued for the benefit of the survivors, and the share of the deceased is to be paid to his issue or legal representative. The language used indicates that the testator did not intend this provision to be limited to the death of one brother or sister, but to continue applicable to several deaths, and so long as there should remain a survivor ; and, therefore, he

used the unusual yet not inapt phrase, "then the income, herein intended for the one or the other so dying, shall be paid to the issue or representative of the one or the other so dying;" meaning by the phrase, "one or the other," the same as though he had said each one so dying. So that, to ascertain the meaning of the testator, the sentence may without impropriety be read: And I hereby expressly declare that, in case either of my said brothers and sisters shall die, leaving the others surviving, then the income herein intended for each one so dying shall be paid to the issue or representative of each one so dying.

If the eighth clause stood in this form alone, there would be no difficulty in saying that the testator intended to create a trust fund for the benefit of his four brothers and sisters, which should be indivisible until the death of the last survivor of them, and should be maintained as their several deaths occurred before the death of the last survivor by paying the share of each one so dying to his issue or representative.

The share of any decedent of the four brothers and sisters leaving no issue, would go to the administrator or executor of the deceased brother or sister ; and the provision for that purpose goes far to show the intention, on the part of the testator, to keep the trust fund intact and yielding an income to be divided in equal shares until the last of the four lives named in the clause shall have terminated. The other provision of the eighth clause looks very clearly to, and was intended to provide for, the final division of the trust estate. That clause reads: "And after the several deaths of my said brothers and sisters, then to divide the said real and personal estate equally among the children of my said brothers and sisters respectively, the said children to take the parents' share."

It is claimed that this provision indicates the testator's intention, upon the death of each one of the four brothers and sisters, to require the trustees to divide his or her share of the trust fund among the children of such brother or sister, and that the words "after the several deaths" should be construed as though read "upon the respective deaths."

But it is to be observed, firstly, that this is not a provision for the division of a share or shares of the trust fund, but for a division of the whole. The language, "then to divide the said real and

personal estate," obviously refers to and means "the rest, residue and remainder" of the estate, both real and personal, which the testator has put in trust; secondly, it is to be observed that it is not a share to be divided among the children of a deceased brother or sister, but a fund to be divided among the children of all the brothers and sisters; thirdly, it is to be observed that this division is to be made "after the several deaths of my said brothers and sisters," which, in the connection in which it is used, is equivalent to saying, after all my said brothers and sisters shall have severally died. And though it may be true that the words "several deaths" may, under certain circumstances, be rendered "respective deaths," yet, when such reading would be in conflict with and defeat another provision relating to the same subject-matter which looks to a continuation of income and a distribution of it upon the respective deaths of beneficiaries, it will not do to give such a rendering to the words "several deaths" if used in connection with a division of the whole trust fund. All the provisions relating to the subject-matter in this eighth clause must be taken and construed together to ascertain the intention of the testator; and so taken they seem to us to develop with great plainness that his intention was that his entire residuary estate should be placed in trust in the hands of his executors for a period which should not terminate till the death of the last survivor of his four brothers and sisters; and that while the income should be continuously divided during the whole period bounded by the life of the last survivor, yet no division of the corpus should be made until the last survivor should die; and this is what the will accomplishes by its provisions, if we hold them to be valid in law.

Ascertaining this to be the meaning of the eighth clause of the will, the only remaining question is, whether or not it is in conflict with the law.

Upon that question there can be no room for doubt. The statute expressly declares that the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the trust. (Section 15, art. 1, tit. 2 and chap. 1, part 2 of the Revised Statutes.) The fourteenth section of the same article declares that every future estate shall

be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom the absolute fee in possession can be conveyed. Section 1, title 4 of the same chapter provides that the absolute ownership of personal property shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance and until the termination of not more than two lives in being at the death of the testator. We do not think it is true that, in respect to the personal property embraced in the trust, there were, at the death of the testator, parties in being who could make a perfect title; for it seems to us impossible to say, with certainty, who will be the children of the respective beneficiaries of this trust at its termination by the death of all the brothers and sisters to whom a life-use in the trust is given.

From these views it follows that the judgment of the court below was erroneous and must be reversed.

Judgment should be entered construing the will in accordance with this opinion, with costs to the several parties, to be paid by the trustees out of the fund.

DANIELS, J., concurred; BRADY, J., dissented.

Ordered accordingly.